FILED 23 SEP '26 14:55 USDC-ORE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| **JEREMY A. WILLIAMS,**<br><br>Plaintiff,<br><br>v.<br><br>**ADDCOX ELECTRIC, INC., d/b/a ADDCOX HEATING CENTER,**<br><br>Defendants. | **Case No.:** 6:26-CV-01974-MTK<br><br>**COMPLAINT WITH DEMAND FOR JURY TRIAL** |

Plaintiff Jeremy A. Williams ("Plaintiff"), by and through his attorneys, brings this action against Defendant Addcox Electric, Inc. d/b/a Addcox Heating Center ("Defendant" or "Addcox"), and alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this case for disability discrimination and retaliation, interference with his rights under Paid Leave Oregon, whistleblower retaliation, and unpaid compensation arising from his employment with Defendant Addcox Electric, Inc. d/b/a Addcox Heating Center ("Addcox").

2. Addcox employed Plaintiff for more than six (6) years, promoted him to Service Manager, and knew of his disabilities.

3. After he reported suspected falsification of warranty documents, requested a disability accommodation, and gave notice of protected family leave, Addcox selected his position for elimination and terminated him when he returned from leave.

4. Plaintiff alleges that the stated elimination was a pretext for unlawful discrimination and retaliation.

5. Plaintiff seeks relief under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; ORS Chapters 659A and 657B; Oregon contract law; and Oregon's final-wage statutes.

**JURISDICTION AND VENUE**

6. This Court has federal-question jurisdiction over Plaintiff's ADA claims, a federal law, under 28 U.S.C. § 1331.

7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the Oregon claims.

8. The state law claims concern the same common nucleus of operative facts regarding employment relationship, decisionmakers, disability-related treatment, protected activities, termination, and compensation, and form part of the same case or controversy.

9. The Court has personal jurisdiction over Addcox because it is an Oregon corporation operating its business in Roseburg, Oregon, and the conduct challenged in this action arose from its employment of Plaintiff in Oregon.

10. Venue for the ADA claims is proper in the District of Oregon under 42 U.S.C. § 2000e-5(f)(3), incorporated by 42 U.S.C. § 12117(a), because the alleged unlawful employment practices occurred in Oregon and Plaintiff would have continued working in Oregon but for those practices.

11. Venue is also proper under 28 U.S.C. § 1391(b)(2), to the extent applicable to the remaining claims, because a substantial part of the events and omissions occurred in this District.

12. Divisional venue is proper in the Eugene Division under District of Oregon LR 3-2(a)(3) and (b).

13. Plaintiff worked for Addcox in Roseburg, Douglas County, Oregon, where the employment decisions and other events giving rise to this action occurred.

## PARTIES

14. Plaintiff is an individual residing in Douglas County, Oregon.

15. He worked for Addcox from April 11, 2018 until September 10, 2024.

16. Defendant Addcox Electric, Inc. is an Oregon corporation doing business as Addcox Heating Center, with its business located at 831 Northwest Highland Street, Roseburg, Oregon 97470.

17. On information and belief, Addcox employed at least twenty-five (25) employees during the relevant period and at least fifteen (15) employees for each working day in each of at least twenty (20) calendar weeks in the relevant current or preceding calendar year.

18. It was an employer engaged in an industry affecting commerce under 42 U.S.C. § 12111(5), an employer covered by ORS 659A.106 and 659A.112, and an employer subject to ORS Chapter 657B and the Oregon wage statutes.

19. Aaron Fonsen was Addcox's General Manager and exercised authority over Plaintiff's assignments, training, compensation, and continued employment.

20. Leann Wells, formerly known as Leann Jellison, exercised office-management responsibilities.

21. In the conduct alleged below, Fonsen and the other management personnel acted as Addcox's agents within the scope of their authority, and their conduct renders Defendant liable under the doctrine of *respondeat superior*.

## ADMINISTRATIVE PROCEEDINGS

22. Plaintiff submitted a signed administrative complaint to the Oregon Bureau of Labor and Industries ("BOLI"), which recorded a filing date of June 20, 2025.

23. The matter was initially assigned BOLI Case No. 25-01786 and later Case No. EEEMRG250620-50977, and was dually filed with the Equal Employment Opportunity Commission ("EEOC") as Charge No. 38D-2025-00412.

24. The charge described disability-related harassment, denial of training and accommodation, protected leave, reports of suspected unlawful conduct, and termination.

25. On June 22, 2026, BOLI issued a substantial-evidence determination concerning Addcox's failure to restore Plaintiff to employment and termination following Paid Leave Oregon leave, under ORS 657B.060 and 657B.070.

26. BOLI mailed its notice of right to file a civil action under ORS 659A.880 on June 22, 2026.

27. Plaintiff brings his state statutory claims within the applicable period prescribed by ORS 659A.875 and 659A.880 and invokes the civil remedies available under ORS 659A.885, subject to ORS 659A.870.

28. To the extent that the BOLI's substantial-evidence determination does not qualify as a notice of right to sue from the EEOC, Plaintiff shall obtain one and amend his complaint to exhaust administrative remedies for his ADA claims.

## FACTUAL ALLEGATIONS

***Employment and qualifications***

29. Addcox hired Plaintiff on April 11, 2018 through the Social Security Administration's Ticket to Work program and Oregon vocational rehabilitation services.

30. Addcox knew at the outset that Plaintiff had physical limitations and was returning to work with support and accommodations.

31. Plaintiff initially worked as a dispatcher and later held Residential Comfort Advisor and Commercial Account Manager positions.

32. In 2022, Addcox promoted him to Service Manager.

33. His advancement and continued employment reflected his ability to perform valuable work for the company.

34. As Service Manager, Plaintiff supervised approximately six (6) technicians and a dispatcher and performed service-management, sales, coordination, and administrative duties.

35. His compensation included an annual salary of approximately $70,000, a bonus arrangement, and employment benefits, including health insurance and use of a company vehicle.

36. Plaintiff could perform the essential functions of his Service Manager position with the accommodations he used and requested.

37. He remained willing and able to perform that position when his protected leave ended.

38. His managerial work did not require him personally to perform every physical task assigned to a field technician.

***Known disabilities and repeated harassment***

39. Plaintiff has chronic spinal and back impairments that substantially limit, among other major life activities, lifting, bending, and prolonged sitting or standing.

40. He also has a diagnosed mental impairment and a record of disability.

41. Addcox knew of his impairments and also regarded him as disabled, as reflected in management's repeated comments about his mental condition and physical capabilities.

42. A July 26, 2017 functional capacity evaluation found that Plaintiff could work full time at the light physical-demand level with limitations.

43. Plaintiff supplied the evaluation to Addcox when hired.

44. In April 2018, his work setup included an appropriate chair and the ability to alternate sitting and standing.

45. From 2018 into 2024, Fonsen repeatedly referred to Plaintiff as "paranoid" in front of coworkers and subordinates, discussed Plaintiff's mental health with them, and treated his condition as a subject of ridicule.

46. Coworkers then mocked Plaintiff about matters Fonsen had disclosed.

47. Plaintiff experienced the comments and disclosures as unwelcome and humiliating.

48. After Plaintiff was rear-ended while driving a company vehicle on September 13, 2023, Fonsen again called him paranoid in discussions with coworkers and told Plaintiff to "get over" what was causing his paranoia.

49. Those statements reinforced the repeated disability-related ridicule rather than addressing his work abilities individually.

50. The conduct was repeated by the General Manager, in the workplace and before employees whom Plaintiff supervised or worked alongside.

51. It undermined Plaintiff's dignity and authority, caused distress, and made his working environment hostile.

52. Addcox had notice of the conduct through Fonsen's own participation and permitted it to continue.

***Denial of technician training***

53. Beginning in or about August 2022 and continuing during his remaining employment, Plaintiff asked Fonsen for additional technician training relevant to the service department and opportunities to remain employed in that department.

54. Fonsen refused requests on the stated ground that Plaintiff could not physically do the work and that spending money on such training would be a waste.

55. Addcox provided Plaintiff other training, including online instruction and management-related training.

56. The denial challenged here concerns the additional technician training Plaintiff sought and was not permitted to attend because of assumptions about his disability.

57. Plaintiff identified further training opportunities, but Fonsen did not permit his participation.

58. Fonsen did not individually assess whether Plaintiff could participate in the requested training or perform relevant duties with reasonable adjustments before refusing on the basis of his physical limitations.

59. Plaintiff observed other service technicians performing work with accommodations.

60. When Fonsen later announced that managers would work within their departments after restructuring, he cited Plaintiff's lack of technician training as the reason Plaintiff could not remain.

61. Addcox thus relied on a training deficiency after excluding Plaintiff from the training he had requested.

***The June 4 accommodation request***

62. On June 4, 2024, Plaintiff emailed Leann Wells and copied Addcox's human-resources address after an interaction about answering telephone calls.

63. He explained that a neck injury prevented ordinary use of the office phone and expressly requested a reasonable accommodation.

64. Plaintiff explained that his headset connected unreliably to the desk phone and dropped customer calls, but connected reliably to his company cell phone.

65. He asked that calls be transferred to the cell phone so that he could assist with calls using the working headset connection.

66. He also objected to Wells's hostile response to the request and a coworker's intrusion into a matter concerning his medical condition.

67. The request identified the limitation, a specific workable adjustment, and Plaintiff's willingness to perform the telephone duties.

68. Addcox did not meaningfully discuss the request with him or resolve it through the requested arrangement or an effective alternative.

69. Plaintiff was left without an effective accommodation for the identified telephone limitation.

***Reports of suspected warranty falsification***

70. In early 2024, before the termination decision, a vendor asked Plaintiff to falsify warranty documentation in connection with Addcox's business.

71. Plaintiff refused and reported the request to Fonsen.

72. He believed in good faith that submitting false warranty information to obtain payment or benefits would violate the law.

73. Plaintiff's report identified the requested falsification, rather than merely expressing a disagreement over business practices.

74. Fonsen responded in substance that Plaintiff should send him the paperwork and that he would sign it to assist the customer notwithstanding the falsification Plaintiff had reported.

75. Fonsen therefore knew of Plaintiff's report and refusal when he participated in the decisions to eliminate Plaintiff's position and end his employment.

76. Plaintiff alleges that his report was a substantial factor in those decisions, together with the other unlawful motives pleaded alternatively below.

***Protected family leave and termination***

77. On November 6, 2023, Plaintiff gave Fonsen written notice of anticipated intermittent leave connected with his wife's pregnancy.

78. On April 29, 2024, he notified management, human resources, and payroll of his planned continuous bonding leave following the anticipated birth of his child, expected in late June, for just under twelve (12) weeks.

79. In mid-June 2024, after that notice and shortly after Plaintiff's June 4 accommodation request, Fonsen told Plaintiff that department-manager positions would be eliminated.

80. Fonsen stated that other managers would work within their departments, but Plaintiff would be laid off because he lacked the technician training needed to work in his department.

81. Plaintiff asked Fonsen to reconsider and requested an available equivalent position. Fonsen withdrew the immediate layoff decision, and Plaintiff remained employed when his continuous leave began.

82. Plaintiff expected to return to work at the end of the approved leave.

83. Plaintiff took state-approved Paid Leave Oregon family bonding leave from June 25 through September 9, 2024.

84. He had worked for Addcox far longer than the ninety (90) days required for statutory job protection.

85. On June 27, 2024, Plaintiff received state notice that his paid leave would end September 9, 2024 and forwarded the notice to Addcox's management, human resources, and payroll.

86. Addcox knew the approved leave period and anticipated return date.

87. On August 7, 2024, while Plaintiff remained on leave, Fonsen sent an email titled "Addcox Heating Summary of all Requests."

88. It stated that the Service Manager position had been dissolved and that Plaintiff would be laid off immediately upon his return.

89. Fonsen wrote: "Your lay-off date will be the day of your return."

90. The same email stated that Addcox did not expect to hire a Service Manager for years, that Fonsen would assume the duties, and that other positions would pay substantially less.

91. It identified dispatcher work at up to $19.00 per hour, subject to the position remaining open.

92. Plaintiff was also offered install-coordinator work at substantially reduced compensation.

93. He declined the lower-paying positions; neither restored his former pay and benefits.

94. Fonsen's August 7 email also said Plaintiff should not attend the company party because he would no longer be part of the company, and stated a policy barring vacation or paid time off in combination with Paid Leave Oregon benefits.

95. The communication treated Plaintiff as excluded from employment benefits while he was still on approved leave.

96. On August 27, 2024, Plaintiff confirmed to management, human resources, and payroll that he would return September 10, 2024.

97. He reported for work on that date, ready and able to resume his managerial duties. Addcox did not restore him to those duties or an equivalent position and terminated his employment.

***Evidence contradicting the stated elimination***

98. Plaintiff's service-management work continued during his absence. Fonsen stated in the August 7 email that he had assumed the position's responsibilities.

99. Samantha, a former dispatcher who had worked under Plaintiff, later told him that work had fallen to her and another employee after he was gone.

100. Plaintiff alleges that Addcox continued to require and distribute the functions he had performed.

101. On information and belief, other managers, including Dustin Whitney and Leann Wells, remained employed through reassignment within their departments.

102. Plaintiff, who had requested additional training and then protected leave, lost his employment.

103. On information and belief, another employee, Controller Lacey Ihrcke, also took Paid Leave Oregon leave and had her position eliminated, with Wells thereafter performing her duties.

104. On information and belief, based on public company posts identified in BOLI's investigation, Addcox's July 8, 2024 Instagram post showed Install Manager Dustin Whitney teaching pipe threading and invited applicants to its apprenticeship program.

105. That recruitment occurred during Plaintiff's leave, after the stated decision to eliminate management positions.

106. On information and belief, based on another company post identified in the investigation, an April 10, 2026 Facebook post identified Whitney as Addcox's Service Manager.

107. Plaintiff does not yet know when Whitney assumed that title.

108. The post conflicts with the categorical representation that Addcox would not have a Service Manager for years and warrants examination of the actual timing and substance of the alleged elimination.

109. Addcox explained its action at different times by reference to an overall management reduction, fewer leads, departmental losses, and Plaintiff's lack of training for other duties.

110. It later characterized the lower-paid positions as transitional, although the August 7 email identified no promised restoration to equivalent compensation and instead predicted that comparable management work would be unavailable for years.

111. Plaintiff alleges that the timing, management's disability-related statements, reliance on denied training, retention of other managers, continued service-management functions, and

the company's recruitment and subsequent use of the Service Manager title support the inference that the claimed elimination was a pretext.

***Earned bonus and demands for payment***

112. On or about August 22, 2022, before Plaintiff accepted the Service Manager position, Fonsen promised on Addcox's behalf that Plaintiff would receive a bonus for his work even if the targets in the bonus program were not reached.

113. Plaintiff accepted the position and performed the managerial services in reliance on that compensation agreement.

114. Plaintiff alleges that the guaranteed-bonus promise remained part of his compensation arrangement and covered his work during the first part of 2024 before leave.

115. Addcox did not pay that bonus.

116. The amount is to be established from the agreed compensation terms, prior payments, and Addcox's compensation and payroll records.

117. On October 7, 2024, Plaintiff emailed Fonsen demanding his bonus for the first half of 2024.

118. Fonsen's October 8 response quoted a Service Manager compensation plan and asserted that revenue, margin, and other performance targets had not been met.

119. Plaintiff disputed that those targets eliminated the separately promised guarantee and renewed his demand in October.

120. On October 28, 2024, Fonsen again refused payment, said Plaintiff was a major cause of revenue loss, accused him of blackmail, and directed him to stop contacting company employees.

121. Plaintiff denies seeking unlawful payment and alleges that he sought compensation earned under the agreement.

122. The demanded bonus remains unpaid.

***Injury***

123. As a result of the challenged conduct, Plaintiff lost wages, employment benefits, and employment opportunities and suffered humiliation, anxiety, emotional distress, and worsening sleep difficulties.

124. A November 18, 2024 behavioral-health appointment documented his report that sleep difficulties had worsened following his September termination.

125. Plaintiff seeks losses caused by Addcox's unlawful conduct, including any proven aggravation of existing conditions, and will account for other causes, interim earnings, mitigation, and applicable offsets.

**FIRST CAUSE OF ACTION**
**Disability Discrimination under the ADA**
**42 U.S.C. § 12112**

126. Plaintiff incorporates the preceding factual allegations to the extent relevant to this claim.

127. Plaintiff was a qualified individual with an actual disability, a record of disability, and/or a disability perceived by Addcox.

128. With reasonable accommodation where necessary, he could perform the essential functions of his Service Manager position.

129. Addcox was a covered employer and knew of his disability and limitations.

130. Addcox discriminated against Plaintiff in the terms and privileges of employment by excluding him from identified technician-training opportunities because of disability-related

assumptions and by selecting him for termination and ending his employment because of his actual or perceived disabilities.

131. The earlier training decisions and remarks also supply background and evidence of discriminatory intent concerning the termination.

132. Plaintiff's actual or perceived disability was a but-for cause of the challenged discriminatory employment action.

133. Addcox's stated business reasons were pretextual for the reasons alleged above, including its reliance on training it had denied him because of disability.

134. The intentional discrimination caused the economic and noneconomic injuries alleged above. Plaintiff seeks back pay, lost benefits, appropriate reinstatement or front pay, compensatory and punitive damages to the extent authorized by 42 U.S.C. § 1981a, and fees and costs under 42 U.S.C. § 12205.

**SECOND CAUSE OF ACTION**
**Retaliation under the ADA**
**42 U.S.C. § 12203(a)**

135. Plaintiff incorporates the preceding factual allegations to the extent relevant to this claim.

136. Plaintiff engaged in protected activity by requesting reasonable accommodation, including his written June 4, 2024 request, and objecting to disability-related mistreatment.

137. He held a good-faith belief that he was entitled to accommodation and nondiscriminatory treatment.

138. Addcox knew of that activity.

139. After the request and objections, Addcox selected Plaintiff for layoff, refused restoration to his former employment, and terminated him.

140. The proposed layoff closely followed the June 4 request, and the termination was carried out after his leave.

141. These actions would deter a reasonable employee from requesting accommodation or opposing discrimination.

142. Plaintiff alleges that his protected activity was a but-for cause of the retaliation. Fonsen's participation, the sequence of events, reliance on the training he had denied, and the pretext evidence described above support that inference.

143. Plaintiff seeks the equitable relief available for ADA retaliation, including back pay, lost benefits, reinstatement or front pay, and appropriate prospective relief, together with reasonable fees and costs under 42 U.S.C. § 12205.

**THIRD CAUSE OF ACTION**
**Disability Discrimination under Oregon Law**
**ORS 659A.112**

144. Plaintiff incorporates the preceding factual allegations to the extent relevant to this claim.

145. Plaintiff was a qualified individual with a disability within ORS 659A.104 and 659A.115.

146. Addcox was a covered employer and knew of Plaintiff's disabilities, his record of impairment, and the accommodations enabling his work.

147. Addcox discriminated against Plaintiff in training and other terms and conditions of employment and discharged him because of his disability, contrary to ORS 659A.112(1) and (2).

148. It denied identified technician training based on assumptions about his physical condition and then relied on that lack of training when selecting him for separation while retaining other managers.

149. Plaintiff's disability was a substantial factor in the adverse treatment. His promotions, ability to perform his managerial work, management's disability-related comments, and the circumstances surrounding the claimed elimination contradict Addcox's asserted nondiscriminatory explanation.

150. The violation caused Plaintiff's economic loss and emotional distress. He seeks the legal and equitable relief available under ORS 659A.885, including economic and noneconomic damages, reinstatement or front pay as appropriate, punitive damages upon the required showing, and reasonable attorney fees and costs.

**FOURTH CAUSE OF ACTION**
**Disability Retaliation under Oregon Law**
**ORS 659A.109 and 659A.030(1)(f)**

151. Plaintiff incorporates the preceding factual allegations to the extent relevant to this claim.

152. Plaintiff invoked the disability protections of ORS 659A.103 to 659A.145 by requesting accommodation and seeking equal access to work and training.

153. He also objected to treatment he in good faith believed was discriminatory, including the hostile response to his disability-related telephone request.

154. Addcox knew of his invocation of rights and objections.

155. Addcox retaliated against Plaintiff by selecting him for separation and terminating him after his protected activity.

156. His invocation of disability protections and, alternatively, his opposition to discriminatory treatment were substantial factors in the adverse actions.

157. The retaliation violated ORS 659A.109 and, to the extent based on protected opposition, ORS 659A.030(1)(f).

158. Plaintiff relies on the chronology, the decisionmaker's knowledge and remarks, and the pretext evidence alleged above.

159. Plaintiff suffered economic and noneconomic loss and seeks relief under ORS 659A.885, including damages, appropriate equitable relief, punitive damages upon the required showing, and reasonable attorney fees and costs.

## FIFTH CAUSE OF ACTION
## Paid Leave Oregon Interference and Retaliation
## ORS 657B.060 and 657B.070

160. Plaintiff incorporates the preceding factual allegations to the extent relevant to this claim.

161. Plaintiff was eligible for and took approved Paid Leave Oregon family leave from June 25 through September 9, 2024.

162. He had been employed by Addcox for more than ninety (90) days, provided advance notice, and communicated his September 10 return.

163. Addcox was subject to the statutory job-protection and anti-retaliation provisions.

164. Under ORS 657B.060, Plaintiff was entitled to restoration to his former position if it still existed, regardless of whether Addcox had assigned someone else to it during leave.

165. If the position no longer existed, Addcox, as an employer with at least twenty-five (25) employees, was required to restore him to an available equivalent position with equivalent benefits, pay, and other terms at the former worksite, or at a worksite within fifty (50) miles if such a position was available.

166. Plaintiff alleges that the claimed elimination was not genuine: Addcox continued the service-management functions, distributed them among retained employees, and subsequently identified another employee as Service Manager.

167. By using a purported elimination to deny restoration and discharge Plaintiff because he took leave, Addcox violated ORS 657B.060 and 657B.070.

168. Alternatively, to the extent an equivalent position existed when Plaintiff returned, Addcox failed to offer it as required by ORS 657B.060.

169. The dispatcher and install-coordinator positions it offered carried materially lower pay and benefits and were not equivalent positions.

170. Plaintiff's refusal to accept a substantial reduction in compensation did not satisfy Addcox's restoration obligation.

171. Separately, Addcox retaliated and discriminated against Plaintiff because he invoked Paid Leave Oregon protections.

172. It chose him for separation after his leave notice, excluded him from a company event during leave, communicated that his layoff would occur on the very day he returned, and terminated him rather than restore his employment.

173. His invocation and use of protected leave were substantial factors in that treatment.

174. Plaintiff's approved leave did not entitle Addcox to treat him as already separated or to impose a discriminatory loss of employment benefits.

175. Its August 7 exclusion and stated blanket prohibition on using accrued paid leave alongside Paid Leave Oregon benefits further support the allegation of hostility toward his invocation of statutory rights.

176. Addcox's interference and retaliation caused lost compensation, lost benefits, and emotional distress.

177. Plaintiff seeks relief under ORS 659A.885, including damages, appropriate reinstatement or front pay, punitive damages upon the required showing, and reasonable attorney fees and costs.

**SIXTH CAUSE OF ACTION**
**Whistleblower Retaliation**
**ORS 659A.199**

178. Plaintiff incorporates the preceding factual allegations to the extent relevant to this claim.

179. Plaintiff made a good-faith internal report to General Manager Fonsen concerning a request to falsify warranty documentation.

180. He believed the requested false documentation was evidence of unlawful conduct designed to obtain payment or benefits through misrepresentation.

181. Reporting that information was protected by ORS 659A.199.

182. Fonsen knew the substance of the report and Plaintiff's refusal to participate.

183. Thereafter, Fonsen selected Plaintiff for separation and carried out the termination while relying on the pretextual explanations alleged above.

184. Plaintiff alleges that his protected report was a substantial factor in Addcox's decision to terminate him.

185. The decisionmaker's knowledge, his response indicating willingness to sign the challenged paperwork, and the circumstances undermining the asserted elimination support Plaintiff's allegation of retaliatory motive.

186. The retaliation caused economic loss and emotional distress.

187. Plaintiff seeks damages and appropriate equitable relief under ORS 659A.885, punitive damages upon the required showing, and reasonable attorney fees and costs.

## SEVENTH CAUSE OF ACTION
## Failure to Provide Reasonable Accommodation
## ORS 659A.112(2)(e) and 659A.118

188. Plaintiff incorporates the preceding factual allegations to the extent relevant to this claim.

189. Plaintiff had an actual physical disability that limited his use of the ordinary office telephone and was otherwise qualified to perform his job.

190. Addcox knew of the limitation through his June 4, 2024 written request and its prior knowledge of his physical impairments.

191. Transferring calls to Plaintiff's company cell phone, to which his headset reliably connected, was a specific accommodation enabling him to perform the telephone work.

192. It used available equipment and did not require removal of an essential function.

193. On the facts known to Plaintiff, it would not have imposed undue hardship.

194. Despite notice and a workable proposed adjustment, Addcox did not provide that accommodation or an effective alternative and did not engage in the discussion needed to resolve the limitation.

195. Its failure deprived Plaintiff of an effective means to perform the identified work and caused compensable injury.

196. This claim concerns the failure to accommodate; the failure to engage in an interactive process is supporting conduct.

197. Plaintiff seeks the economic and noneconomic damages attributable to the violation, appropriate equitable relief, punitive damages upon the required showing, and reasonable attorney fees and costs under ORS 659A.885.

## EIGHTH CAUSE OF ACTION
## Disability Harassment and Hostile Work Environment
## ORS 659A.112

198. Plaintiff incorporates the preceding factual allegations to the extent relevant to this claim.

199. Because of Plaintiff's actual or perceived disability, Fonsen repeatedly ridiculed him as paranoid, disclosed and discussed his mental condition before coworkers and subordinates, and demeaned his disability-related concerns.

200. Coworkers participated in the resulting mockery.

201. The repeated conduct continued into 2024 and was unwelcome.

202. Considering its frequency, persistence, public nature, the General Manager's authority, and its effect on Plaintiff's working relationships, the disability-related conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an objectively and subjectively hostile work environment.

203. Plaintiff experienced humiliation and distress and interference with his ability to work in that environment.

204. Addcox is responsible for its General Manager's conduct in the exercise of supervisory authority.

205. It also knew or should have known of the related coworker harassment and failed to take effective corrective action. Its tolerance and continuation of the disability-based harassment violated ORS 659A.112.

206. Plaintiff seeks economic and noneconomic damages caused by the hostile environment, appropriate equitable relief, punitive damages upon the required showing, and reasonable attorney fees and costs under ORS 659A.885.

## NINTH CAUSE OF ACTION
## Breach of the Bonus Compensation Agreement
## Oregon Common Law

207. Plaintiff incorporates the preceding factual allegations to the extent relevant to this claim.

208. Through Fonsen, Addcox offered Plaintiff the Service Manager position with a compensation agreement that included a guaranteed bonus even if the stated bonus-program targets were not reached.

209. Plaintiff accepted the offer and furnished consideration by undertaking and performing the managerial work.

210. Plaintiff performed the services required of him to earn the guaranteed bonus for the first part of 2024.

211. He alleges that the guarantee was part of the parties' compensation agreement and was not eliminated merely because Addcox later asserted that departmental performance goals had not been met.

212. Addcox breached the agreement by failing to pay the earned guaranteed bonus when due and by refusing Plaintiff's October 2024 demands.

213. Plaintiff disputes Addcox's reliance on the performance formula as a complete defense to the separate guarantee.

214. The breach caused damages equal to the earned, unpaid bonus, in an amount to be established at trial from the compensation agreement, course of performance, and payroll and business records, together with prejudgment interest where ascertainable under Oregon law.

215. Plaintiff seeks a single recovery of the unpaid compensation pleaded in this and the following claim.

## TENTH CAUSE OF ACTION
**Failure to Pay Earned Wages upon Termination**
**ORS 652.140 and 652.150**

216. Plaintiff incorporates the preceding factual allegations to the extent relevant to this claim.

217. The bonus promised in exchange for Plaintiff's managerial services was compensation for work performed and, to the extent earned under the parties' agreement, constituted wages.

218. Addcox discharged Plaintiff on September 10, 2024 without paying the earned bonus.

219. Under ORS 652.140(1), wages earned and unpaid at discharge were due no later than the end of the next business day, September 11, 2024.

220. Addcox failed to pay the bonus then or after Plaintiff's written demands. Plaintiff does not allege that a wholly discretionary or unearned bonus became payable merely because his employment ended.

221. Addcox's nonpayment was willful: Fonsen knew the compensation commitment made on its behalf, received the written demands identifying the unpaid first-half 2024 bonus, and deliberately refused payment.

222. Plaintiff seeks penalty wages under ORS 652.150 at the statutory rate for no more than thirty (30) days, subject to the statute's notice requirements, caps, and applicable defenses.

223. Plaintiff seeks the unpaid wages, statutory penalty wages to the extent proved, interest, and reasonable attorney fees and costs under ORS 652.200(2).

224. The wages remained unpaid more than 48 hours, excluding weekends and holidays, after becoming due.

225. Plaintiff's written demands gave Addcox notice of the claim before suit; counsel's entitlement to fees is subject to the statutory requirements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Addcox as follows:

A. Award back pay, lost employment benefits, and other proven economic losses caused by the unlawful conduct, subject to mitigation and applicable offsets;

B. Order reinstatement to appropriate employment with restoration of benefits and seniority, or award front pay where reinstatement is not appropriate;

C. Award the earned, unpaid bonus and any other compensation proved due under the claims pleaded, without duplicating wage or contract recovery;

D. Award compensatory damages for emotional distress, humiliation, and other proven noneconomic injury under the discrimination and Oregon statutory claims that authorize those damages;

E. Award punitive damages on claims permitting that relief, upon proof of the applicable culpability standard and subject to any applicable statutory limitation;

F. Award penalty wages under ORS 652.150 to the extent authorized and proved;

G. Grant declaratory and equitable relief necessary to redress Plaintiff's injuries and protect his rights in connection with any reinstatement;

H. Award prejudgment and postjudgment interest as allowed by law;

I. Award reasonable attorney fees and costs under 42 U.S.C. § 12205, ORS 659A.885, ORS 652.200, and other applicable authority; and

J. Grant such other relief as the Court deems just and proper. Each form of relief is sought only under claims authorizing it; no compensatory or punitive damages are requested solely under the ADA-retaliation count.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a jury trial on all claims and issues triable of right by a jury.

Dated: Jamaica, New York
September 18, 2026

Respectfully submitted,

*/s/ Jeremy Williams*
Jeremy Williams

Plaintiff, *pro se*

ORIGIN ID:RBGA (541) 315-1876
JEREMY WILLIAMS

278 3RD STREET

YONCALLA, OR 97499
UNITED STATES US

SHIP DATE: 18SEP26
ACTWGT: 0.10 LB
CAD: 107724801/INET4535

BILL SENDER

TO **WAYNE L. MORSE U.S. COURTHOUSE**

**405 EAST EIGHTH AVENUE**

**EUGENE OR 97401**
(541) 431-4100 REF:
INV:
PO: DEPT:

58KJ6/0166/484B

FedEx Express

E

J261026012001uv

SATURDAY 5:00P
STANDARD OVERNIGHT

TRK# 0201 **8774 3074 3189**

**86 EUGA**

97401
OR-US PDX